13265

### NEWBERRY v. WALKER

(161 S. E., 100)

---

*Mr. Legare Walker,* for appellant,

*Messrs. Mitchell & Horlbeck,* for respondent,

November 3, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This is a "Controversy Submitted Without Action Upon an Agreed Statement of Facts," filed in the Court of Com-

mon Pleas for Dorchester County. It was heard by his Honor, Judge M. M. Mann, who passed a decree favorable to the plaintiff and decreed specific performance against the defendant. The defendant now appeals to this Court upon the exceptions set out in the record, which will be reported.

The main question involved is the marketability of the title to the lot which plaintiff agreed to convey by a good and marketable title, in fee-simple, to the defendant. The solution to this question depends upon the further question: Would any child or children (now unborn, but which may hereafter be born) of Annabell Huey Smith be entitled to claim a one-half interest in said lot under the will of Alice White Smith, or would they be precluded from asserting such claim, as being bound by the decree in a certain case instituted in the Court of Common Pleas for Dorchester County in 1927 by Frederick P. Smith against Maurice Kimpe, as administrator with the will annexed of Alice White Smith, deceased, et al., referred to in the decree of Judge Mann in the instant case? The facts necessary for an understanding of the questions presented, briefly stated, are these:

Frederick P. Smith and his wife, Alice White Smith, both of Detroit, in the State of Michigan, from March 26, 1925, to March 10, 1927, by six separate conveyances, acquired ten tracts of land, containing in the aggregate about 980 acres, situate in Dorchester County. All of these deeds were in the usual form of deeds to real estate, in common use in this State. The habendum clause in each deed read as follows: "To have and to hold, all and singular, the said premises before mentioned, unto the said Frederick P. Smith and Alice W. Smith, their heirs and assigns forever." These deeds were duly and legally recorded.

Of these lands, one tract containing 498.30 acres is near Summerville. The lot, the marketability of the title to which is involved in this action, is a part of this tract.

Alice White Smith (designated in said deeds as Alice W. Smith) died on June 29, 1927, leaving of force a will dated

February 1, 1927, which was duly admitted to probate in the Probate Court for Oakland County, in the State of Michigan. Frederick P. Smith, who was named in the will as the executor and trustee thereof qualified thereon. Thereafter an exemplified record of the said will and the probate thereof were filed in the Probate Court for Dorchester County, in this State, and duly admitted to probate by that Court on the 10th day of October, 1927, and Maurice Kimpe, a resident of Dorchester County, was duly appointed administrator with the will annexed, and qualified as such.

After giving a legacy of $5,000.00 to one Nancy H. Burrowes, of Barrie, Ontario, the testatrix, Alice White Smith, made the following provisions:

"Third: All the rest, residue and remainder of my property and estate, real and personal of every character whatsoever and wherever situated, I give, devise and bequeath to my trustee hereinafter named, in trust, however for the following uses and purposes:

"(a) Said Trustee is directed to take possession and full control and management of said estate, collect the rents and profits thereof, protect and serve, manage, control, improve, sell, convey, mortgage, pledge, lease, invest and reinvest the same and the proceeds thereof in accordance with the best judgment and discretion of said Trustee as fully as I could do it myself.

"(b) From the net income of said Estate there shall be paid to my sister, Maude H. Farmer, of Birmingham, Michigan, the sum of One Hundred Dollars ($100.00), per month from and after the date of my death, so long as she shall live.

"(c) All the remainder of the net income from my Estate (and after the death of my said sister, the entire net amount) shall be paid to my husband, Frederick P. Smith during his lifetime in convenient installments from time to time.

"(d) After the death of my husband, the net income from my Estate not required to meet the payments to my sister as hereinbefore mentioned, shall be disposed of as directed in

this paragraph. Out of such income there shall be paid for the benefit of my daughter, Annabell Huey Smith for her support, maintenance and education, during her minority, such sums, at such times and in such manner as my Trustee may find most judicious. Any part of the income not required for such purposes shall be added to the principal during her minority. After my said daughter, Annabell Huey Smith, shall have reached the age of 21 years, such net income shall be paid to her in monthly or other convenient installments from time to time. If in the judgment of my Trustee it becomes necessary because of illness, misfortune, emergency or other unforeseen circumstances or condition affecting my said daughter, my Trustee is authorized to use such portion of the principal of the trust for her benefit, either during or after her minority as in the discretion of my Trustee appears necessary to meet such condition; any such expenditure from principal to be later replaced out of the income if practicable.

"(e) Should my said daughter, Annabell Huey Smith, not survive my husband, then the trust property remaining in the hands of my Trustee, upon the death of my husband shall be paid and delivered to her lawful issue, if any survive; and if there be no such issue, then the same shall be paid and delivered to the Children's Aid Society, a Michigan corporation, of Detroit, Michigan, provided, however, that sufficient of the trust property shall be retained in the hands of my Trustee to provide for the continuance of payments to my sister, Maude H. Farmer, during her lifetime. Upon the death of my said daughter, Annabell Huey Smith, at any time after the death of my husband, the trust property remaining in the hands of my Trustee shall be disposed of in the same manner as in the case of her death prior to the death of my husband.

"Fourth: I do not anticipate that my estate will include any real estate, but should there be any real estate, I direct that the same be sold and converted into personal property, and I give to my executor and trustee full power to sell,

mortgage and lease any part of my Estate, real or personal, without obtaining the order of any Court."

In November, 1927, the said Frederick P. Smith instituted an action in the Court of Common Pleas for Dorchester County, S. C., against Maurice Kimpe, as administrator with the will annexed of Alice White Smith, deceased, Frederick P. Smith, as executor and trustee of the will of Alice White Smith, deceased, Maude H. Farmer, Annabell Huey Smith, and Children's Aid Society. In this action Frederick P. Smith alleged that at various times between March 1, 1925, and February 16, 1927, he had purchased the said ten tracts of land at his own expense and cost, and paid the purchase price thereof from his own individual funds, and spent considerable further of his own funds in improving the site with a clubhouse, golf courses, and other improvements; that in the State of Michigan (the home of himself and his wife, Alice White Smith) the common-law estate by the entirety still existed, and that he and his wife were familiar with said estate; that it was their intention to take title deeds to the South Carolina lands by the entirety, as they did not know that such an estate did not exist in this State; that thus by mutual mistake of law and of fact they had taken the deeds to the lands in South Carolina with the intention and under the belief that they were taking an estate therein by the entirety and not as tenants in common. A reformation of the deeds was prayed for, in order to effectuate the alleged intention of Frederick P. Smith and his wife, so that the full title in fee simple would vest in him.

All persons in interest, *in esse,* were before the Court in the action of *Frederick P. Smith v. Maurice Kimpe, as Administrator, with the will annexed of Alice White Smith et al.,* but of necessity the child or children (then unborn, but who might hereafter be born) of Annabell Huey Smith, a minor, were not parties and not before the Court. That case resulted in a decree of his Honor, Judge Mann, granting the relief prayed for; the deeds were reformed; and full title to the lands was decreed to be vested in fee simple in Frederick

P. Smith, and certificates to that effect were indorsed on the records of the deeds. From that decree no appeal was taken.

On May 8, 1931, Frederick P. Smith executed a deed to John S. Newberry, purporting to convey to him, in fee simple, all the South Carolina lands, except a small part not involved in this case.

On May 21, 1931, Newberry, plaintiff-respondent, and Lawrence A. Walker, defendant-appellant, in the case at bar, entered into a contract of purchase and sale, wherein the former agreed to sell and convey to the latter, by good and marketable title, in fee simple, and the latter agreed to purchase, the lot in question, which, as before stated, is a part of the lands covered by one of the deeds to Frederick P. Smith and Alice White Smith.

On June 4, 1931, Newberry tendered to Walker a deed to the lot, regular in form, purporting on its face to convey the same in fee simple, which deed was refusel by Walker, on the ground that Frederick P. Smith had only a one-half undivided interest in the lot, and therefore had conveyed only his one-half interest to John S. Newberry, and for that reason the title was not marketable.

Since there was no appeal from the decree of the Circuit Court in the case of *Frederick P. Smith v. Maurice Kimpe, as administrator with the will annexed of Alice White Smith, deceased, and others,* that decree which adjudicated that the deeds should be reformed so as to vest the fee-simple title to all of the real estate which had been conveyed to Frederick P. Smith and Alice W. Smith, in Frederick P. Smith alone became *res adjudicata* binding upon all who were parties to that proceeding, regardless of its correctness or incorrectness; but such adjudication distinctly adverse to the interests of the unborn children of Annabell Huey Smith cannot be binding upon them.

It is perfectly clear that at the time of the death of Mrs. Smith she possessed title to an undivided one-half interest in the land, as a tenant in common with

her husband; having made no conveyance of that interest in her lifetime, it passed, not to her heirs or devisees, but to the trustee named in her will, to be converted into cash and disposed of as directed in the will.

If the husband had brought action against Mrs. Smith in her lifetime, demanding a reformation of the deed as he did in the *Kimpe case,* and a decree had been passed as was done in the *Kimpe case,* there would have been no doubt that Mrs. Smith would have been bound by the decree as *res adjudicata.*

But he did not bring such action until after the death of Mrs. Smith, and, if the land had been so devised as to give the unborn children of Annabell Huey Smith a contingent remainder, their interests could not have been divested except according to the rule in *Bofil v. Fisher,* 3 Rich. Eq. (24 S. C. Eq.), 1, 55 Am. Dec., 627. See, also, *Gaines v. Sullivan,* 117 S. C., 475, 109 S. E., 276; *Des Champs v. Mims,* 148 S. C., 52, 145 S. E., 623.

But again this contingency did not occur; Mrs. Smith having died owning the half interest undisposed of, it falls under the provisions of clause 4 of the will, which directs its conversion into money, making it a part of her personal property, to be disposed of by the trustee as provided in the first three clauses.

The unborn children of the daughter, therefore, can never be held to have acquired any legal title to the lands; they may upon birth be held to have acquired an equitable interest in the trust estate. This feature distinguishes the present case from the *Des Champs case, supra.*

We think that, so far as the unborn children are or may be concerned, the Kimpe proceeding is a nullity; and that the title tendered by Newberry to Walker necessarily leaves open the interests of the unborn children of the daughter who may hereafter come in to assert that the half interest of Mrs. Smith, existing at the time of her death, be sold and that the proceeds become a part of the trust estate.

Without doubt, Frederick P. Smith has conveyed his interest in the lands in question to Newberry. He did not convey the trust estate therein to Newberry. As trustee, he yet may convey that interest, for valuable consideration, to Newberry, and thereby cure the defect in the title.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and the cause be remanded to that Court for such other proceedings as the parties may be advised.

MESSRS. JUSTICES COTHRAN, STABLER, CARTER and BONHAM concur.