No. 34,808

Guy E. Lewis et al., *Appellees*, v. Nancy Grace McConchie, a Minor, et al., *Appellants*.

(100 P. 2d 752)

Opinion filed April 6, 1940.

E. C. *Flood* and *Clayton S. Flood,* both of Hays, for the appellants.

J. C. *Ruppenthal,* of Russell, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action to quiet plaintiff's title in and to a described 480 acres of land in Ellis county owned by Grace E. McConchie at the time of her death on August 6, 1931, and for the construction of her will, the pertinent portions of which read:

"I, Grace E. McConchie, being of sound mind, do hereby bequeath all my earthly possessions to my four children, Guy E. Lewis, Jessie E. Lesher, James C. McConchie and William McConchie. I wish said property or real estate to be held in common as long as my children live. Either of them dieing, their share goes to the surviving above-mentioned children, but, in case of any of said children dieing and leaving children of their own, those children are to take their parent's share, and said real estate still be kept together and after the present encumbrance is canceled no other mortgage shall ever be put on real estate again."

Plaintiffs are the four children of Grace E. McConchie (together with their spouses) named in her will. The defendants are the grandchildren of the testatrix and children of plaintiffs. All of the defendants are minors, and each of them was duly served with summons as provided by law. The court appointed a guardian *ad litem* for all of the minor defendants. The court, also, upon the petition of and at the request of plaintiffs, appointed a trustee to act for and on behalf of the unknown and unborn grandchildren of Grace E.

McConchie, deceased, and any and all unknown and unborn remaindermen under her last will. The guardian *ad litem* filed an answer containing a general denial, and alleging that each of the minors has a contingent interest in the real estate involved in the action under the terms of the will above mentioned, and that the will should be construed as devising to each of the children, and the survivor of them, a life estate only, and devising remainder interest in said property to the grandchildren of said Grace E. McConchie who may survive all of her children. The trustee filed an answer of the same tenor on behalf of the unknown and unborn grandchildren of Grace E. McConchie, deceased, and the unknown and unborn remaindermen under her last will.

Plaintiffs' reply was a general denial.

Pertinent findings of fact made by the trial court are as follows:

"1. Grace E. McConchie died August 6, 1931, testate, resident of Ellis county, Kansas; her last will was duly admitted to probate and record, letters issued, the estate administered and closed and the representative discharged in the probate court of said county.

"2. At her death Grace E. McConchie was seized in fee simple title and was in possession of the (lands in question), subject only to mortgage lien of Laconia Savings Bank, defendant, upon the three quarter sections in Ellis county.

. "3. No husband survived Grace E. McConchie. She left no children, natural or adopted, except plaintiffs Guy E. Lewis, Jessie E. Lesher, James C. McConchie and William McConchie, who were her only children. She left no grandchildren other than children of her four children herein named. By her will testatrix devised and bequeathed all her property to her said four children. . . .

"4. No child, heir-at-law, issue, grandchild or descendant, whether living or in being or unborn at the time of testatrix's death, took or had or has or will in the future have or take any right, title, interest, estate, claim or equity in or to the estate or any part thereof of testatrix, Grace E. McConchie, either directly or contingently or as remainderman, except her said four children: Guy E. Lewis, Jessie E. Lesher, James C. McConchie and William McConchie. That all of said four children are of full age.

"5. By the provisions of said will of Grace E. McConchie, the fee-simple title to all lands (in question) vested at once and absolutely in said four children named as devisees, to the total exclusion of all other children, if any, issue, descendants, and grandchildren of said testatrix, and of all parties to this action and of all persons now claiming, or who may hereafter claim under said will whether presently or contingently in the future.

"6. No right, title, interest, estate or equity may be claimed hereafter either legally or equitably in said real estate or any part thereof under and by virtue of the terms of said will, by any minor defendant herein or by any grandchildren or grandchild of said Grace E. McConchie now unborn, or by

any remainderman contingent or unborn, whether during minority of any such person or upon such person's reaching and attaining rights of legal majority, but all such should be and are now forever barred. . . .

"9. Guy E. Lewis, Jessie E. Lesher, James C. McConchie and William McConchie are owners in fee simple and are in possession of the (land in question) free and clear of any right, title, interest, estate or equity of any defendant herein, or of any unborn or unknown claimant under the will of Grace E. McConchie, subject, however, to the leasehold rights aforesaid of said Cities Service companies, and subject also to the rights aforesaid of Laconia Savings Bank.

"10. All defendants and all persons claiming or to claim by, through or under them or any of them, at the present time or at any future time, and whether during or after the minority of such claimant should be and are barred of and from any and all right, title, interest, estate or equity of any kind or nature whatsoever in or to said real estate devised by testatrix, or any part thereof, saving only as to defendants as set out above in the last preceding paragraph 9."

Judgment was rendered in harmony with these findings. Defendants, by their guardian *ad litem* and trustee, have appealed and question the trial court's construction of the will as devising the land in fee to the four children of the testatrix. Appellants submit that the will involved should be construed as devising a life estate only to the four children and the remainder to the grandchildren of the testatrix living at her death and such other grandchildren of the testatrix, if any, yet unborn. The will, of course, must be construed by considering the situation of the testatrix and all the provisions of the will relating to the disposition of the real property. In *Hawkins v. Hansen,* 92 Kan. 73, 139 Pac. 1022, it was held:

"The rules of construction applied to wills by this court in numerous cases recognize that each will must be construed by its own terms, and that where there is any ambiguity in the language the court must, as far as possible, put itself in the position of the testator, taking into consideration all the circumstances under which the will was executed, the condition of the testator's family and his estate, and from all the facts and circumstances find what his intention was." (Syl. ¶ 1.)

See, also, *Jameson v. Best,* 124 Kan. 633, 635, 261 Pac. 582. There are many other cases to the same effect. We must consider, also, our statute (G. S. 1935, 22-258), which reads:

"Every devise of real property in any will shall be construed to convey all the estate of the testator therein which he could lawfully devise, unless it shall clearly appear by the will that the testator intended to convey a less estate."

By the first sentence of the portion of the will in question the

testatrix devised the real property in controversy "to my four children," naming them. Standing alone, this is an unrestricted devise in fee simple of the real property to the four persons named in the will as the children of the testatrix.

Does it clearly appear by the will that the testatrix intended to convey a lesser estate? The second sentence, "I wish said property or real estate to be held in common as long as my children live," simply expresses a desire or hope of the testatrix. The same may be said concerning the phrase which occurs later in the will, "and said real estate shall be kept together and after the present encumbrance is canceled no other mortgage shall ever be put on the real estate again." This also expresses the hope or expectation the children would be able to pay and have canceled the mortgage then encumbering the land. This proved to be a vain hope; the mortgage has been foreclosed. There is nothing imperative about these provisions. The will makes no alternative consequences to flow from the inability or failure of the named devisees to carry out these provisions. In *Wright v. Jenks,* 124 Kan. 604, 261 Pac. 840, it was held:

"An attempted restriction upon the alienation of property is ineffective where no person but the alienor is concerned and where the grantor or testator who sought to impose the restriction prescribed no effective barrier to enforce it, such as an active trusteeship, provision for reëntry, alternative grant or devise over for breach thereof." (Syl. ¶ 3.)

And at pages 609 and 610 a number of cases in support of the rule are cited. For later cases, see *Somers v. O'Brien,* 129 Kan. 24, 281 Pac. 888; *Guarantee Title & Trust Co. v. Siedhoff,* 144 Kan. 13, 16-18, 58 P. 2d 66; *Bank of Powhattan v. Rooney,* 146 Kan. 559, 561, 72 P. 2d 993.

The other pertinent provision pertains to whom goes the share of a child who died. Omitting the second sentence, and connecting this with the first, the will reads:

"I, Grace McConchie, being of sound mind, hereby bequeath all my earthly possessions to my four children, Guy E. Lewis, Jessie E. Lesher, James C. McConchie and William McConchie. . . . Either of them dieing, their share goes to the surviving above-mentioned children, but, in case of any of said children dieing and leaving children of their own, those children are to take their parent's share, . . ."

If there is anything indefinite in this it is with respect to the *time* the testatrix had in mind when one of her children might die. The language indicates the time she had in mind was that prior to her

death. Under the first sentence if all her children were living at her death and the will was probated the property would go to the four children in equal shares. In this event there would be no occasion to provide an alternative place for one of the shares to go. A similar provision was before the court in *Hodges v. Lanyon*, 108 Kan. 407, 195 Pac. 882. There the syllabus reads:

"A will devised property to certain parties and then provided—

"'In the event of the death of any of the beneficiaries named in this paragraph 14 of my will, then and in that event the portion of my estate arising from the properties described in this paragraph 14 to which such deceased beneficiary would be entitled, I will and bequeath and direct that it be paid to Mirza Temple, Ancient Arabic Order, Nobles of the Mystic Shrine, to be used by Mirza Temple for their charitable purposes as the officers of said Temple may direct.'

"*Held*, that the words, 'In the event of the death of any of the beneficiaries,' mean the death of any of the devisees before the death of the testator."

In *Koelliker v. Denkinger*, 148 Kan. 503, 507, 83 P. 2d 703, in discussing the aspects of a will then before the court, it was said:

"If land be devised to B and his heirs, but if he shall die, then to C and his heirs, 'die' means if B shall die before the testator. If B dies before the testator, C takes; if B survives the testator he takes a fee simple absolute, and C is out."

More than that, by the terms of the will there appears to be only one time when the title to property passes under it, and that is at the death of the testatrix. We cannot therefore construe the will, as is suggested by appellant, that the children named in the first sentence receive only a life estate, and that the fee never actually vested in anyone permanently until the death of the last one of the surviving children of the testatrix; for, if so construed, there is no provision in the will for title to vest at all. By its terms the grandchildren "are to take their parent's share." If their parents had only a life estate those children could take no more; hence, there would be no ultimate vesting of title. The law favors the vesting of estates. (*Votapka v. Votapka*, 136 Kan. 224, 14 P. 2d 732.) G. S. 1935, 22-258, tends to forbid such a construction. The testatrix appears to have had in mind the fixing of title in her four children, if they were living at the time of her death, but if one or more of them should be dead at that time, then to fix title in either the survivors of the four children or in the children, if any, of the deceased child. We find no error in the construction of the will as given by the trial court.

Apparently out of an abundance of caution counsel raise the question again as to the binding effect of a judgment against minor defendants properly served and represented by a guardian *ad litem*. In *Kistler v. Fitzpatrick Mortgage Co.*, 146 Kan. 467, where the same question was before the court, it was held:

"A minor defendant in a civil action, properly served with summons and represented at the hearing of the case by a guardian *ad litem,* duly appointed, is bound by the judgment to the same extent as an adult would be bound."

We think this holding applies to any type of civil action.

Plaintiffs in their petition name as defendants all of the living grandchildren of the testatrix and allege that no trustee had been appointed by any court to act for and on behalf of the unknown and unborn grandchildren of the testatrix and unknown and unborn remaindermen under her last will, and ask that such a trustee be appointed. The court made an order appointing a trustee to act for and on behalf of the unknown and unborn grandchildren of the testatrix and the unknown and unborn remaindermen under her last will, and said trustee duly qualified and filed an answer substantially the same as the answer of the guardian *ad litem*. The question is raised as to whether it was proper to appoint such trustee. Even though the statute makes no specific provision for such an appointment the court repeatedly, under general rules of equity, has been required to meet the question. (See *Bell v. Watkins,* 90 Kan. 558, 135 Pac. 596; *Bartram v. Kemp*, 113 Kan. 246, 214 Pac. 96; *Davis v. Davis*, 121 Kan. 312, 246 Pac. 982; *Robinson v. Barrett*, 142 Kan. 68, 45 P. 2d 587; *Ragland v. Ragland,* 146 Kan. 103, 68 P. 2d 1100.) In this case, while the court unquestionably had authority to appoint the trustee, yet the only real interest the trustee could represent in this case would be that of grandchildren of the testatrix who are as yet unborn, if any there may be, or someone claiming under them. However, such grandchildren could have no greater interest or claims at any time than the grandchildren living at present, who were properly served in this case by summons, as provided by statute, and who were properly represented in the case by a guardian *ad litem* duly appointed in conformity to our statute; and certainly, if the living grandchildren of the testatrix have no interest in the property in question under the will before the court, any later born grandchildren of the testatrix could not be in any better position.

We find no error in the record. The judgment of the trial court is affirmed.

ALLEN, J. (dissenting): We are called upon to construe a very short will. The will provides:

"I, Grace E. McConchie, being of sound mind, do hereby bequeath all my earthly possessions to my four children, Guy E. Lewis, Jessie E. Lesher, James C. McConchie and William McConchie. I wish said property or real estate to be held in common as long as my children live. Either of them dieing, their share goes to the surviving above-mentioned children, but in case of any of said children dieing and leaving children of their own, those children are to take their parent's share, and said real estate still be kept together and after the present encumbrance is canceled no other mortgage shall ever be put on real estate again. . . ."

Three constructions are possible.

1. It might be construed as creating an estate in fee simple in the four children subject to an executory limitation in favor of the children of any child who should die leaving children, or to the surviving children in case any child should die without children. Thus a gift to B and his heirs and if he should die without surviving children, then to his surviving brothers, was held to create a fee simple in B subject to an executory limitation to his brothers. (*Platt v. Woodland,* 121 Kan. 291, 246 Pac. 1017.)

The will directs that if any child dies "their share" goes to the survivors, and if any child dies leaving children, "those children are to take their parent's share." These expressions are common where a fee is given to one person with an executory limitation shifting the title to others upon a stated event. But as there is no express language giving a fee to the children, and no additional expression pointing in that direction, it would be an innovation to say the children received a fee subject to an executory gift over. Nevertheless, this construction would give the grandchildren an interest in the property—and that was the manifest wish of the testatrix.

2. It might be construed as giving a fee to the children with a substitutional gift over in case any child should die before the testator.

Where A devises property to B and his heirs, but if he shall die to C and his heirs, the gift to C is substitutionary. The clear purpose is to avoid an intestacy in the event B should predecease the testator. Hence C takes only in the event B dies before the testator, otherwise, B, the chief object of the testator's bounty, would only take a life estate. But the reason for that rule does not apply in the limitation before us, as the testator has guarded against an

intestacy by providing where the property shall go if any child dies either with or without children.

3. It might be construed as giving a life estate to the children with alternative remainders over.

While the first clause in the will gives the land to the four children, there is no express language defining the estate of such children. The third sentence in the will reads:

"Either of them dieing, their share goes to the surviving above-mentioned children, but in case of any of said children dieing and leaving children of their own, those children are to take their parent's share, and said real estate still be kept together and after the present encumbrance is canceled no other mortgage shall ever be put on real estate again."

The clear meaning of this language, construed in the light of the entire will, is that one-fourth of the property is to go to each child and if any child should die *without children* the property is to go to the surviving children, but if any child should die leaving children, the property is to go to such children. The words "without children" are supplied by necessary intendment, as the sentence would be meaningless without such words. Suppose the will had provided: "To my four children B, C, D, and E, and on the death of either child without children, to the surviving children, but on the death of either child leaving children, to such children." Would not the meaning be the same as expressed in the will? Thus each child would take a life estate with alternative remainders over.

As each child must die either with children or without children, all possible events for the destination of the property is provided for in the will. All possibilities are exhausted.

Restatement of Property, § 108, *Comment c*, reads:

"*c. Construction—Limitation of further alternative interests exhausting all possible contingencies.* When a conveyance transfers an interest in land to a named conveyee with no express language defining the estate of such conveyee, and also transfers further interests in the same land limited upon various contingencies, which, taken together, exhaust all combinations of events possible at the death of the first conveyee, the intent of the conveyor required for the operation of the rule stated in this section is manifested, and an estate for life is created.

"*Illustration:* 9. A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B and on B's death survived by children to such children and their heirs, but on B's death unsurvived by children, to the C Orphan Asylum.' B receives an estate for life."

The majority opinion adopts the second or substitutionary construction. If we examine the reason for the rule and the authorities

it is submitted the conclusion cannot be supported. It destroys the gift to the grandchildren and thus sets aside the manifest intention of the testatrix. I favor the third construction.

Counsel for appellees in their brief state:

"All parties wish a final determination that will set at rest forever all questions as to title of the lands herein. Prospective purchasers of oil leases and of mineral rights in these lands hesitate to venture large sums of money upon grants and conveyances of plaintiffs, so long as there lurks in the minds of counsel for such purchasers a fear that the six minor grandchildren now living may be able to litigate anew after they reach majority, and yet more that other grandchildren of Grace McConchie may hereafter be born, since her four living children (plaintiffs) are all young, and that such unknown and unborn may be entitled to their day in court at any time until each has attained majority. Even the defendant Laconia Savings Bank has a concern, in that said bank made only the four children parties in foreclosure and did not implead any minors, any grandchildren, any heirs known or unknown, born or unborn, nor make any effort to bar such.

"Without oil or mineral rights to give as security, the owners of the land, whether fee title be vested in Grace E. McConchie's four adult children named in her will, or whether they have only a life estate with remainder in her six minor grandchildren now in being and such others, if any, as may yet be born, the money cannot be raised which the bank desires to have promptly in redemption from its loan and investment. Although not technically affecting legal rights in the matter, the practical situation is that the four plaintiffs must give rights in the lands to secure money to redeem, or the mortgage which so worried the aged mother will take the ranch from the McConchies. It is not practically possible for six living minors, resident in three different counties of Kansas and also in California, to coöperate with plaintiffs and to find a way to have legal guardians in four jurisdictions and approval of lease or sale or mortgage by such minors, and also make sure to a tentative purchaser or investor that unknown and unborn heirs cannot arise at some future time to make legal claims."

But it is not necessary to destroy the remainder in the grandchildren to accomplish the desired result. In a proper case, where it appears necessary for the preservation of the interests of all the parties, a court of equity has power to enter a decree directing a sale of land which is binding on outstanding future interests. The court may direct the proceeds be held in trust for the benefit of all persons who had interests in the land, or may direct the purchase of other lands with the title held under the same limitations. (*Gavin v. Curtin*, 171 Ill. 640, 49 N. E. 523, 40 L. R. A. 776.) See, also, 3 Simes, Future Interests, 295-304, sections 789-794; Schnebly, "Power of Life Tenant or Remainderman to Extinguish Other Interests by Judicial Process," 42 Harv. Law Rev. 30, 54.