**Anna P. HATCH, Plaintiff,**

v.

**The RIGGS NATIONAL BANK et al., Defendants.**

Civ. A. No. 2107–64.

United States District Court
District of Columbia.

April 17, 1968.

Marion Edwyn Harrison, Washington, D. C., for plaintiff.

Wallace L. Duncan, Washington, D. C., for defendant Rosalie G. Sheedy.

Frederick M. Bradley, Washington, D. C., for defendant The Riggs National Bank.

Thomas A. Flannery, Washington, D. C., for defendant Francesca Hall, guardian ad litem.

Robert M. Scott, Washington, D. C., guardian ad litem for the unborn heirs.

## MEMORANDUM

SIRICA, District Judge.

Plaintiff, settlor and life beneficiary of an irrevocable trust, seeks to

modify its terms.[1] Such trusts may be modified provided the settlor and all beneficiaries consent.[2] The heirs of the settlor comprise the remaining beneficiaries.[3] Plaintiff cannot obtain the consent of all the beneficiaries because her heirs cannot be ascertained until her death. At an earlier point in this litigation plaintiff sought to obtain relief by arguing that, applying the doctrine of worthier title, she was the settlor and sole beneficiary, and therefore the terms of the trust could be modified.[4] This argument was rejected by the court of appeals which abolished the doctrine of worthier title as a rule of law or construction in the District of Columbia.[5] The court indicated in dictum, however, that a guardian *ad litem* could be appointed to represent the interests of the unborn heirs so that the trust could be modified provided the consent of all interested parties were obtained.[6]

Subsequently a guardian *ad litem* was appointed for this purpose. At the present time agreement has been reached among the existing heirs, the guardian *ad litem* for the unborn heirs, and the plaintiff. All the parties have consented to plaintiff's motion for summary judgment except the Riggs National Bank, the trustee.

Riggs' objection, properly made as trustee, is that the court does not have the authority to appoint a guardian *ad litem* for unborn persons without explicit statutory authority. No such authority exists in the District of Columbia. The procedure followed by plaintiff, implemented by the district court, was at the suggestion of the court of appeals.

1. The terms of the trust, which was established in 1923, provide that the plaintiff is to receive all of the income "for her own use and benefit, without the power to her to anticipate, alienate or charge the same." Upon her death the corpus is to pass as the settlor by will appoints, or if no appointment is made, to the settlor's next of kin as determined by the District of Columbia law of intestate succession.

2. Restatement (Second) of Trusts § 338 (1959); *see* Liberty Nat'l Bank v. Hicks, 84 U.S.App.D.C. 198, 173 F.2d 631 (1948); Hurt v. Gilmer, 59 App.D.C. 282, 40 F.2d 794 (1930).

3. Since plaintiff can have no "heirs" until she dies, it would be more correct to refer to "potential heirs," but for the sake of convenience "heirs" will be used throughout this opinion.

4. The doctrine of worthier title provides that a conveyance by a grantor with a limitation over to the grantor's heirs creates a reversion in the grantor, not a remainder interest in the heirs. To take by descent, rather than by purchase, is said to create a "worthier title." Moynihan, Real Property 150 (1962); *see* Hatch v. Riggs Nat'l Bank, 124 U.S.App. D.C. 105, 108–109, 361 F.2d 559, 562–563 (1966), and cases cited therein.

The inter vivos branch of the doctrine was applied as a rule of law in the District of Columbia at least as early as 1889:

So, where the grantor of a life estate gives a remainder to his own heirs, the law decrees it to mean a remainder to *himself and his heirs* and will declare the fee to be in the grantor, though as a reversion, notwithstanding the limitation to the heirs. * * *

Miller v. Fleming, 18 D.C. (7 Mackey) 139, 149 (1889). For early applications of the wills branch of the doctrine see Landic v. Simms, 1 App.D.C. 507 (1893); Jost v. Jost, 12 D.C. (1 Mackey) 487 (1882). The wills branch is moribund today. *See* Morris, The Wills Branch of the Worthier Title Doctrine, 54 Mich.L. Rev. 451 (1956). In contrast to the District of Columbia, most modern jurisdictions apply the doctrine of worthier title as a rule of construction, following Judge Cardozo's opinion in Doctor v. Hughes, 225 N.Y. 305, 122 N.E. 221 (1919). *See* Beach v. Busey, 156 F.2d 496 (6th Cir. 1946); Morris, The Intervivos Branch of the Worthier Title Doctrine, 2 Okla.L.Rev. 133 (1949); Verall, The Doctrine of Worthier Title: A Questionable Rule of Construction, 6 U.C.L.A. L.Rev. 371 (1959).

5. Hatch v. Riggs Nat'l Bank, *supra* note 4. Apparently the doctrine was little used following its application in Miller v. Fleming, *supra* note 4.

6. *Id.* at 110–112, 361 F.2d at 564–566.

Riggs cites several cases from other jurisdictions, treatises by leading authors, and commentaries on the decision of the court of appeals to support its contention. The court of appeals was aware of a split among other jurisdictions with respect to the power of a court to appoint a guardian *ad litem* without statutory authority,[7] but felt that the cases opposed to such action were not persuasive.[8]

A review of these cases reveals that their persuasiveness on the issue is more limited than indicated by a bare statement of their holding.[9] In *McPherson v. First & Citizens Nat'l Bank*,[10] the Supreme Court of North Carolina held that a guardian *ad litem* for unborn persons could not be appointed without statutory authority, citing *Deal v. Sexton*.[11] A close reading of *Deal* reveals that it held only that where an unborn child was not represented in a partition proceeding, by appointment of a guardian *ad litem* or otherwise, the child is not bound by the decision. The *Deal* case does not state that a guardian *ad litem* cannot be appointed without statutory authority. In fact the language of the court is subject to exactly the opposite interpretation. Speaking of an interest running in favor of an unborn child the court says that "such inheritance ought not to be divested and the child's estate destroyed by judicial proceedings to which it was in no form or manner a party, *and for which not even a guardian ad litem was appointed*," [12] thus indicating that a guardian *ad litem* could and should have been appointed.

Such action has been taken by the courts of a number of jurisdictions as an appropriate solution for the problem presented.[13]

Riggs suggests further that the leading authorities in the field are of the view that the court cannot appoint a guardian *ad litem* to represent unborn beneficiaries without statutory authority, citing American Law of Property.[14] A review of that work reveals that its editor does not take a position on this question, but merely points out that there is a difference of opinion on this issue. In fact, the editor says approvingly that "in at least two jurisdictions the appointment of a guardian *ad litem* * * * for an unborn person has been recognized by the courts. This would seem reasonable if the appointment is to be made

---

7. *Id.* at 111 n.16; 361 F.2d at 565 n.16.

8. See *id.* and accompanying text.

9. With respect to Moxley v. Title Ins. & Trust Co., 154 P.2d 417 (Cal.Dist.Ct.App. 1945), *aff'd*, 27 Cal.2d 457, 165 P.2d 15, 163 A.L.R. 838 (1946), a case relied on by Riggs, the court of appeals pointed out that, on appeal from a decision holding that a guardian *ad litem* could not be appointed without statutory authority, the Supreme Court of California did not discuss this question. Rather the affirmance was based on failure to state facts constituting a cause of action. Justice Traynor, dissenting, was of the opinion that a guardian *ad litem* could be appointed under the inherent power of a court of equity, citing Mabry v. Scott, 51 Cal.App.2d 245, 124 P.2d 659, *cert. denied sub nom.* Title Ins. Co. v. Mabry, 317 U.S. 670, 63 S.Ct. 75, 87 L.Ed.2d 538 (1942). Hatch v. Riggs Nat'l Bank, *supra* note 4, at 111 n.16, 361 F.2d 565 n. 11. Thus *Moxley* is left in a posture which is not very persuasive for Riggs' position: an affirmance on a ground other than that for which the case is cited, and a dissent which rejects Riggs' argument and affirms an earlier view opposed thereto.

10. 240 N.C. 1, 81 S.E.2d 386 (1954).

11. 144 N.C. 157, 56 S.E. 691 (1907).

12. *Id.* at 158, 56 S.E. at 692. (Emphasis added.)

13. Mabry v. Scott, *supra* note 9; Robinson v. Barrett, 142 Kan. 68, 45 P.2d 587 (1935); Foreman v. Taylor, 239 S.W.2d 260 (Ky.App.1951); Peoples Nat'l Bank v. Barlow, 235 S.C. 488, 112 S.E.2d 396 (1960); Utah Copper Co. v. Industrial Comm'r, 57 Utah 118, 193 P. 24, 13 A. L.R. 1367 (1920); Lewis v. McConchie, 151 Kan. 778, 100 P.2d 752 (1940) (dictum); see Franklin v. Margay Oil Corp., 194 Okl. 519, 153 P.2d 486 (1944); *cf.* Cauffiel v. Cauffiel, 39 Del.Ch. 190, 161 A.2d 432 (Ch.1960); Smith v. Lamb, 103 Ga.App. 157, 118 S.E.2d 924 (1961).

14. 1 American Law of Property § 4.87 (Casner ed. 1952).

only in the sound discretion of the court."[15]

The other treatises dealing with this question generally state that there is authority on both sides.[16] The Restatement of Property specifically declines to take a position on the question,[17] but other works have indicated that such action by the court is, by the better view, valid.[18]

Of the nine law reviews commenting on the *Hatch* case, four do not discuss the source of authority for appointing a guardian *ad litem*,[19] three indicate that the court, by the majority view, has such authority,[20] and two state that the court does not.[21] With respect to the latter, one favors such actions but indicates that the authority is scant.[22] In sum, then, only one journal stated that such authority was nonexistent. The others were of the view that either the court had such authority, or that it was not clear whether the court did or did not.

Riggs' concern was principally that the court of appeals' suggestion was merely dictum. This question has now been fully briefed and argued in the instant motion. Where it has been necessary for the judiciary to inquire whether the court can appoint a guardian *ad litem* without statutory authority most courts have determined that such authority exists. This conclusion is not disputed by the majority of the legal commentators.

■ Federal Rule of Civil Procedure 17(c) authorizes the court to appoint a guardian *ad litem* for an infant or incompetent person.[23] The purpose is, of course, to protect the interest of the infant or incompetent. The rule also has the effect of permitting alienation or disposition of property interests which would be precluded were there not some way for the infant or incompetent to be represented. The same considerations which allow appointment of a guardian *ad litem* for minors or incompetents apply with respect to an unborn person.[24] At times equity is done by the court by such appointment to a greater extent than if no action is taken. The court must consider not only the interests of the unborn person, but also unfairness which might accrue to living persons if the court fails to act. It is the duty of a court of equity to strike a proper balance between these interests. It was such a balance that was considered by the court of appeals when it suggested that appointment of a guardian *ad litem* would be proper.

■■ This court is of the opinion that not only does it have authority to appoint a guardian *ad litem* without statutory authority but that the majority of jurisdictions and commentators agree and approve of such action. A court of equity which becomes limited in the remedies it is able to fashion loses its ability to function as a court of equity. It is only by remaining sufficiently flexible to meet the changing needs of the parties appearing before it that such a court will be able to fulfill its historical function.

---

15. *Id.* at 553.

16. See *e. g.*, Richard Powell, 2 Real Property ¶ 296, at 573 (Rohan ed. 1967); Lewis Simes & Allan Smith, Future Interests § 1808 (2d ed. 1956).

17. 27 Am.Jur. Infants § 120 (1940).

18. Restatement of Property § 182, comment e (1936).

19. 16 Am.U.L.Rev. 345 (1967); Brooklyn L.Rev. 583 (1967); 55 Geo.L.J. 167 (1966); 42 U.Wash.L.Rev. 919 (1967).

20. 16 C.U.L.Rev. 239 (1966); 42 Notre Dame Law. 542 (1967); 28 Ohio St. L.J. 166 (1967).

21. 66 Colum.L.Rev. 1552 (1966); 41 N.Y. U.L.Rev. 1228 (1966).

22. 66 Colum.L.Rev. 1552 (1966).

23. *See* Cauffiel v. Cauffiel, *supra* note 13, where the Delaware court appointed a guardian *ad litem* pursuant to a local rule adopted from Federal Rule Civil Procedure 17.

24. Peoples Nat'l Bank v. Barlow, *supra* note 13.

In the instant case the court is satisfied that all interests are adequately represented so that the merits of plaintiff's case may be disposed of. It appearing to the court that all parties, except defendant Riggs National Bank, have agreed upon modifications to the trust, that Riggs' objections are without merit, and that the proposed modifications consider and fully protect the interests of any unborn heirs, therefore, plaintiff's motion for summary judgment is granted.